UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SCOTT MATHEWSON,

                            Plaintiff,

  -v-                            3:21-CV-732

NEW YORK STATE, OFFICE OF
MENTAL HEALTH,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

JAMES D. HARTT, ESQ., ATTORNEY    JAMES D. HARTT, ESQ.
   AT LAW
Attorneys for Plaintiff
6 North Main Street Suite 200f
Fairport, New York 14450

HON. LETITIA JAMES              MICHAEL G. McCARTIN, ESQ.
Attorney General for the
   State of New York
Attorneys for Defendant
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

   On June 25, 2021, plaintiff Scott Mathewson ("Mathewson" or "plaintiff")

filed the present complaint alleging three counts of disability discrimination

against defendant New York State, Office of Mental Health ("OMH" or "defendant"). On August 24, 2021, defendant moved to dismiss the complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). That motion, having been fully briefed, will now be decided on the parties' submissions and without oral argument.

## II. BACKGROUND

In November of 2002, Mathewson joined OMH as an Intensive Care Manager ("ICM").[1] Dkt. 5 ("Compl."), ¶ 8. For most of his employment with defendant, plaintiff worked in Broome and Tioga counties. *Id.* ¶ 16. That worked out nicely as far as plaintiff was concerned, because he lived in Vestal, New York, only fifteen miles from the facility where he worked. *Id.* ¶ 22.

Apparently, throughout his entire career with OMH, Mathewson suffered from Chronic Lyme Disease and Chronic Inflammatory Response Syndrome. Compl. ¶ 18. These illnesses allegedly caused plaintiff to suffer from recurring and debilitating fatigue, which he claims interfered with his major life activities of work, travel, and concentration (among others). *Id.* ¶ 19.

At some point before November of 2018, Mathewson alleges that he asked OMH to allow him to adjust his work schedule so that his start time would be

---

[1] The facts are taken entirely from plaintiff's amended complaint and any documents attached to it or incorporated into it by reference, all read in the light most favorable to him.

pushed back to 10:30 a.m., which he claimed would help him mitigate the effects of his illnesses.  Compl. ¶¶ 17, 26.  To hear plaintiff tell it, his physician recommended the flexible schedule to cut down on his stress, which would blunt the edges of his fatigue.  *Id.* ¶¶ 26-27.  Defendant complied with his request on November 5, 2018.  *Id.* ¶ 17.

According to Mathewson, his adjusted work schedule paid immediate dividends.  Compl. ¶¶ 20, 34, 36.  In fact, plaintiff alleges that he received a satisfactory performance evaluation from his supervisor on January 9, 2019 that rated him as meeting or exceeding expectations for his every task area.  *Id.* ¶¶ 36-37.

Mathewson alleges that this improvement to his condition was short-lived, though.  On January 18, 2019, plaintiff alleges that he was called into his supervisor's office.  Compl. ¶ 21.  At that meeting, plaintiff claims that he was reassigned to the OMH facility in Elmira, New York and being denied access to his previously-assigned state vehicle.  *Id.*

According to Mathewson, this meant that he would have to travel to a fleet vehicle facility in Elmira—some forty-five miles away—to pick up a car to start his day.  Compl. ¶¶ 23-24.  Once he got a car, he alleges that he would need to drive thirty-to-sixty miles to his service areas, then drive back to the fleet vehicle facility at the end of his day before he could make the forty-five mile drive back home.  *Id.*  Plaintiff styles this decision as every bit as

inefficient for OMH as it was for him and claims it exacerbated his stress. *Id.* ¶¶ 25, 28.

Mathewson elaborates that this shift in his employment situation took its toll on him. Compl. ¶ 35. As a result, plaintiff's doctor placed him on medical leave on March 4, 2019, apparently specifically noting his transfer as a cause for his medical backslide. *Id.* ¶ 39.

Mathewson never returned from that medical leave. Instead, he claims that he used up all of his time off from all sources for the next year. Compl. ¶ 43. During that time, plaintiff filed grievances concerning his transfer, but he claims that OMH denied his efforts to find a way to to accommodate his illnesses. *Id.* ¶¶ 46-47. Finally, defendant fired plaintiff in March of 2020 as authorized by New York Civil Service Law § 73 for his year-long absence owed to medical leave. *Id.* ¶ 43.

On June 25, 2021, Mathewson filed the present complaint against OMH. Dkt. 1. That complaint asserts three claims of disability discrimination under three different statutes: (1) the Americans with Disabilities Act ("ADA"); (2) the New York State Human Rights Law ("HRL"); and (3) the Rehabilitation Act of 1973 (the "Rehabilitation Act"). Defendant moved to dismiss plaintiff's complaint on August 24, 2021, arguing that he failed to allege an adverse employment action sufficient to support his discrimination claim. Dkt. 9. This decision now follows.

4

## III. LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That factual matter may be drawn from "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Importantly, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). If the complaint and its additional materials—when viewed through that pro-plaintiff lens—are not enough to raise the plaintiff's right to relief on a claim above the speculative level, that claim must be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. DISCUSSION

According to OMH, Mathewson's claims must all be dismissed because he has failed to establish an adverse employment action as required to support a claim of disability discrimination. To defendant's point, courts in this Circuit have generally held that "[a] transfer, or denial of a transfer, to a more or less

convenient location does not, by itself, constitute an adverse employment action." *Pierre v. Napolitano*, 958 F. Supp. 2d 461, 480 (S.D.N.Y. 2013).

And of course, to state a claim for disability discrimination under a theory of disparate treatment, a plaintiff must show: (1) that the defendant is subject to the protective statute upon which the plaintiff relies;[2] (2) that he is disabled within the meaning of that statute; (3) that he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) that he suffered an adverse employment action because of his disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

On their face, then, OMH's arguments seem to entitle defendant to dismissal of Mathewson's claims in one stroke. But disparate treatment is only one flavor of disability discrimination claim. There are three: (1) disparate treatment; (2) disparate impact and (3) failure to make a reasonable accommodation. *Brooklyn Ctr. for Psychotherapy, Inc. v. Phil. Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020).

According to Mathewson, he was not attempting to bring a disparate treatment claim at all. Instead, he styles his disability claims as coming

---

[2] Functionally, disability discrimination claims brought under the ADA, HRL, and Rehabilitation Act are all roughly the same. *See Piligian v. Ichan Sch. of Med. at Mt. Sinai*, 2020 WL 6561663, at *4 (S.D.N.Y. Apr. 7, 2020) (noting that HRL and Rehabilitation Act are analyzed under same standards as ADA).

6

under the third theory of disability discrimination: failure to make a reasonable accommodation. A claim of that sort features the same first three elements as a disparate treatment claim. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006). Where the two differ is the final element. Instead of needing to prove an adverse action, a plaintiff bringing a failure to accommodate claim must prove—predictably—that the defendant failed to accommodate him in a way that would allow him to perform the essential functions of his job. *Id.*

Hashing out a proper accommodation contemplates an "interactive process" in which employer and employee "work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). That process begins when the plaintiff makes his employer aware that he needs an accommodation.[3] *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020). Once the employer becomes aware of the disability, though, the employer must work with the plaintiff to determine whether they can come to a reasonable accommodation. *Atencio v. U.S. Postal Serv.*, 198 F. Supp. 3d 340, 357 (S.D.N.Y. 2016).

---

[3] Of course, where a disability is obvious, there is no need for the employee to make his disability known. *Costabile*, 951 F.3d at 81.

That said, a defendant is of course not required to offer an accommodation "that imposes an undue hardship" on its operations. *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88 (2d Cir. 2004). Instead, the requested accommodation must be reasonable. *Id.* Similarly, the requested accommodation must actually help the plaintiff do his job despite his disability. *Ibrahim v. Pena*, 2017 WL 3601246, at *2 (S.D.N.Y. Aug. 21, 2017).

In any case, an employer apprised of a plaintiff's proposed accommodation must "investigate that request and determine its feasibility." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000). If a plaintiff alleges that his employer failed to make an accommodation and failed to engage in a sufficient interactive process, the plaintiff has adequately pled out his claim of disability discrimination. *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 102 (2d Cir. 2009).

To OMH's mind, the alternate avenue of a failure to accommodate claim does not change the analysis and Mathewson's complaint still fails. In a vacuum, defendant has a point. After all, some courts have held that "[d]ifficulties commuting to a job need not be accommodated," *Raffaele v. City of N.Y.*, 2004 WL 1969869, at *16 (E.D.N.Y. Sept. 7, 2004).

But the Second Circuit has been clear that that is not a blanket rule. In fact, that court has held that "there is nothing inherently unreasonable . . . in

requiring an employer to furnish an otherwise qualified disabled employee with assistance related to h[is] ability to get to work." *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1517 (2d Cir. 1995). As a result, "in certain circumstances," an employer may be required to help an employee with his commute. *Nixon-Tinkelman v. N.Y.C. Dep't of Health & Mental Hygiene*, 434 F. App'x 17, 19 (2d Cir. 2011) (summary order).

The Court is satisfied that Mathewson has met his burden of alleging that his case presents one of the narrow sets of circumstances where OMH would be obligated to help him to ease his commute. He has alleged that he was performing his job duties at a level that was at least satisfactory before defendant stripped him of his vehicle and transferred him to a different office. Compl. ¶¶ 36-37.

What is more, Mathewson's complaint ties the transfer and denial of a vehicle to his purported disability of Chronic Lyme Disease and Chronic Inflammatory Response Syndrome by pointing out that the commute defeated the purpose of his flexible start time, caused him additional stress to exacerbate his condition, and caused his work to suffer. Compl. ¶¶ 28-29, 35. In fact, he claims that his doctor agrees that the transfer and removal of his work vehicle had a deleterious effect on his health. *Id.* ¶¶ 39-40.

Mathewson has also alleged that he grieved OMH's decision to transfer him and take his vehicle, putting defendant on notice of his disability-related

concerns with those decisions. Compl. ¶ 46. Putting those allegations together, plaintiff has plausibly alleged that the extra obstacles in his commute made his disabilities worse and prevented him from doing the job that he had been doing well enough on a previous accommodation plan.

The Court is satisfied that, for the purposes of a motion to dismiss, Mathewson has alleged that OMH failed to make the reasonable accommodation of transferring him back out of Elmira and/or returning his state vehicle to him, which would have allowed him to perform his duties. *See McBride*, 583 F.3d at 102 (holding that employer discriminates on basis of disability if it fails to reasonably accommodate disability and engage in interactive accommodation process).

In addition, by grieving those actions and receiving silence in response for over a full year, plaintiff has also alleged that defendant failed to meaningfully engage in the interactive process contemplated by disability statutes. *McBride*, 583 F.3d at 102 (providing that silence in face of accommodation request constitutes failure to participate in interactive process). Defendant's motion to dismiss must be denied. *See, e.g.*, *Parker*, 204 F.3d at 338 (holding that employer who terminates employee based on exhaustion of leave without investigating feasibility of proposed accommodations discriminates on basis of disability).

## V. CONCLUSION

After carefully considering OMH's argument that Mathewson's claims of disability discrimination should be dismissed, the Court remains unconvinced. Plaintiff has plausibly alleged that defendant failed to meaningfully participate in the interactive process required of it, and simultaneously failed to provide plaintiff with an accommodation for his disabilities. This case must proceed to discovery.

Therefore, it is

ORDERED that

1. Defendant New York State, Office of Mental Health's motion to dismiss plaintiff Scott Mathewson's amended complaint is DENIED; and

2. Defendant New York State, Office of Mental Health must answer plaintiff Scott Mathewson's amended complaint no later than Monday, November 8, 2021.

IT IS SO ORDERED.

Dated: October 29, 2021
       Utica, New York.

David N. Hurd
U.S. District Judge